# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        **MEMORANDUM OF LAW**
        Criminal File No. 19-268 (MJD/BRT)

(1) DARNELL ANDRE DUNN,

        Defendant.

Harry Jacobs and Melinda A. Williams, Assistant United States Attorneys, Counsel for Plaintiff.

Kurt B. Glaser, Smith & Glaser, LLC, Counsel for Defendant Darnell Andre Dunn.

## I.    INTRODUCTION

This matter is before the Court on the Government's Amended Motions in Limine [Docket No. 117] and Defense Motion in Limine [Docket No. 114]. The Court issued its Order on those motions on May 24, 2021. The Court now issues the following Memorandum of Law in conjunction with that Order.

Defendant Darnell Andre Dunn is charged with one count of Felon in Possession of a Firearm, Armed Career Criminal, on August 31, 2019. 18 U.S.C.

§§ 922(g), 924(e).  Defendant concedes that he has been convicted of a felony, that he knew that he had been convicted of a felony, and that the firearm was transported across state lines.  Thus, the only element at issue is whether Defendant knowingly possessed the firearm.  On May 25, 2021, Defendant's co-Defendant, Justin Marlo Lindsey, pled guilty to one count of Felon in Possession of a Firearm, 18 U.S.C. § 922(g), on August 31, 2019.

## II.    DISCUSSION

### A.    Government Motion in Limine to Admit Evidence that Defendant Possessed the Firearm on August 30, 2019 as Res Gestae Evidence and Defense Motion in Limine Precluding Events Prior to August 31, 2019

#### 1.    August 30, 2019 Shooting and Stop as Res Gestae Evidence

The Government seeks to admit evidence of the August 30 drive-by shooting and subsequent traffic stop as res gestae evidence.  Defendant asks the Court to preclude the Government from admitting evidence from any events that occurred before August 31, 2019.

Res gestae, or intrinsic evidence, is not governed by Federal Rule of Evidence 404(b):

> Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred.  Such evidence is admitted because the

other crime evidence completes the story or provides a total picture
of the charged crime.

United States v. Johnson, 463 F.3d 803, 808 (8th Cir. 2006) (citations omitted).

The Court holds that the August 30th events are inextricably intertwined
with the charged crime, provide critical context as to why Officer Dustin
Sweeney approached the car on August 31 and ordered Defendant to get out of
the car, and are probative of the single issue in this case – whether Defendant
knowingly possessed the firearm at the time he was arrested.  See, e.g., United
States v. Cook, 842 F.3d 597, 601 (8th Cir. 2016) (upholding admission of
circumstantial evidence that the defendant had used the gun charged in the
indictment in a shooting three days earlier because it was highly probative of the
defendant's knowing possession of the gun and noting that such evidence was
not inadmissible simply because there was no eyewitness who saw the defendant
shoot the victim).

The jury is "entitled to know the circumstances and background of a
criminal charge."  United States v. LaDue, 561 F.3d 855, 857 (8th Cir. 2009)
(citation omitted).  Additionally, as in LaDue, explanation of the shots fired call
provides critical context for why the police reacted as they did to Defendant
during the August 31, 2019 encounter.  The Court further concludes that this

evidence is not barred by Federal Rule of Evidence 403.  Any prejudice from admission of this evidence is not unfair; it is a critical part of the story of how Defendant was in possession of the firearm.  See LaDue, 561 F.3d at 858.  Similarly, evidence that Defendant gave officers a false name on August 30 provides context and completes the story of the traffic stop on August 30 and the subsequent interaction with law enforcement on August 31.  Any potential prejudice to Defendant is far outweighed by the probative value of the evidence. Additionally, any potential prejudice can be addressed through a limiting instruction.

### 2.    Drugs Found in Car

On August 31, 2019, law enforcement recovered cocaine and Xanax pills from the car in which Defendant was a passenger.  Defendant seeks a ruling excluding this event from evidence.  The Government represents that it will not seek to admit this evidence during its case-in-chief; however, it wishes to reserve the right to use the evidence in rebuttal or on cross examination, for instance, if Lindsey testifies at trial and the evidence becomes relevant in response to defense arguments.  The Government represents that it will notify the Court and Defendant before seeking admission of this evidence.

The Court agrees that evidence of the drugs must be excluded from the Government's case in chief because it has little relevance to the charge at issue and the danger of unfair prejudice to Defendant substantially outweighs any relevance. However, the Court reserves ruling on the admission of such evidence on rebuttal should it become relevant.

### 3.      2016 Shooting

According to the Government, on December 15, 2016, Lindsey repeatedly shot at a man who had robbed him. The incident was captured on video. Lindsey was further identified by his credit card, which he left at the convenience store. Law enforcement recovered four cartridge casings from the scene, which match the shells recovered from the August 30, 2019 drive-by shooting.

Defendant moves to exclude evidence of the shooting. The Government asserts that it is not seeking to admit evidence of the 2016 shooting in its case-in-chief. The Government states that if this evidence becomes relevant in rebuttal, such as for cross-examination of Lindsey if he testifies for the defense, the Government will notify the Court and defense before seeking to admit the evidence.

The Court agrees that evidence of the 2016 shooting has little relevance and presents a great danger of unfair prejudice during the Government's case-in-chief. Therefore, Defendant's motion is granted as to the Government's case-in-chief. If Lindsey testifies as a defense witness, the 2016 shooting may become admissible on cross-examination. Therefore, the Court reserves ruling on the issue of the admissibility of the 2016 shooting on rebuttal.

**B.    Government Motion in Limine to Prevent Reference to Possible Punishment**

The Court grants the Government's motion to preclude the defense, including Defendant should he testify, from referring to the potential sentence or possible punishment of Defendant if he were found guilty at trial. The Eighth Circuit has repeatedly held that such evidence is irrelevant. See, e.g., United States v. Thomas, 895 F.2d 1198, 1200 (8th Cir. 1990) ("[S]entencing procedures or details regarding a defendant's possible punishment are irrelevant to the issues that a federal jury must decide. To inform a federal jury about a defendant's punishment would only introduce improper and confusing considerations before it."). Moreover, the Eighth Circuit Model Jury Instructions provide that the jury may not consider such evidence:

> [I]f the defendant is found guilty, the sentence to be imposed is my responsibility. You may not consider punishment in any way in

deciding whether the [government] [prosecution] has proved its case beyond a reasonable doubt.

Model Crim. Jury Instr. 8th Cir. § 3.12 (2020).

Not only is mention of the potential penalty irrelevant, but it is also poses a danger of unfair prejudice under Federal Rule of Evidence 403. "The only end served by permitting Defendant to present evidence of the potential criminal penalties he may face is an impermissible one: appealing to the sympathies, passions or prejudices of the jury." United States v. Raplinger, No. 05-CR-49 LRR, 2006 WL 2710653, at *1-2 (N.D. Iowa Sept. 20, 2006) (granting motion in limine "barr[ing] [Defendant] from referring to or presenting evidence of the potential criminal penalties Defendant may face if he is convicted").

### C. Government Motion in Limine Precluding the Defendant or his Counsel from Offering or Referring to his own Hearsay Statements

The Court grants the Government's request for an order barring Defendant from offering or referencing his own hearsay statements during trial, either during cross-examination or during his case-in-chief. Federal Rule of Evidence 801(d)(2) provides that a statement is not hearsay if it was made by the opposing party and is offered against the opposing party. However, Federal Rules of Evidence 801(c) and 802 prohibit admission of an out-of-court statement offered

to prove the truth of the matter asserted when offered by the party who uttered the statement.  See United States v. Hughes, 535 F.3d 880, 882 (8th Cir. 2008) (holding that self-serving statement of defendant not admissible as statement against interest or under residual hearsay exception and a defendant is not unavailable to testify as to himself when he invokes his Fifth Amendment privilege).

### D. Government Motion in Limine Allowing the United States to Impeach the Defendant with his Prior Felony Convictions if the Defendant Testifies

The Court grants the Government's motion for an order permitting it to use Defendant's prior felony convictions to impeach his credibility if he chooses to testify.  The Government anticipates that, if Defendant testifies, his testimony will directly contradict that of other witnesses, so his credibility will be a key factor.  Defendant agrees that, before he testifies, defense counsel will work with the Government to produce a list of prior felony convictions that are admissible under the Rules of Evidence.

Federal Rule of Evidence 609(a)(1)(B) provides that evidence of a felony conviction to be used to attack a witness's character for truthfulness "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant."  If it has

been more than 10 years since the witness's conviction or release from confinement, whichever is later, evidence of the conviction is only admissible if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and [] the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  Fed. R. Evid. 609(b).

Defendant's felony convictions are "highly probative of his credibility because of the commonsense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'"  United States v. Headbird, 461 F.3d 1074, 1078 (8th Cir. 2006), (citation omitted) overruled on other grounds by Chambers v. United States, 129 S. Ct. 687, 691 (2009).  The probative value of such impeachment evidence is particularly high where, as here, the jury will be asked to determine the credibility of competing narratives by the defendant and the government's witnesses.  See Headbird, 461 F.3d at 1078 ("Credibility was a key factor in the jury's consideration of the case.  Defense and government witnesses presented contradictory testimony regarding possession of the firearm, and possession was

the only contested element of the offense.").  Both the fact and nature of the

defendant's prior offenses may be used for impeachment.  <u>Id.</u>

### E.    Government Motion in Limine Precluding Defendant from Offering Improper Character Evidence of Any Witness

The Court grants the Government's motion to preclude Defendant from

offering improper character evidence of any of the Government's witnesses,

including law enforcement witnesses, on cross examination without first

providing the Government an opportunity to be heard on admissibility.

Defendant represents that he intends to impeach Officer Dustin Sweeney

with disciplinary records from the St. Paul Police Department showing that he

was disciplined for violating Department policy by driving drunk while

possessing a firearm.  Defendant asserts that Sweeney's disregard for

Department policy shows a lack of professionalism and competence as a police

officer which demonstrates that he inappropriately handled the investigation of

Defendant.  Defendant also intends to impeach Sweeney with the Court's ruling

that he violated Defendant's constitutional rights by extracting an illegal

confession regarding Defendant's use of a false name.  He asserts that extracting

an illegal confession shows that Sweeney conducted himself improperly during

his encounter with Defendant.  Neither incident is admissible under Rule 404(b).

Evidence of prior bad acts is not admissible to prove a witness's character to show that, on a particular occasion, he acted in accordance with that character. Fed. R. Evid. 404(b)(1). Here, the proffered evidence has minimal relevance, and Defendant's sole reason for admitting evidence of these two incidents is to attempt to show that Sweeney has a character trait for acting improperly, incompetently, or unprofessionally and that, therefore, he acted in accordance with that character trait in arresting Defendant. Defendant has not explained how Sweeney's prior bad acts would be relevant to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Additionally, any possible relevance from either incident is substantially outweighed by the danger of unfair prejudice in the form of jury confusion. Fed. R. Evid. 403. And evidence regarding Sweeney's questioning Defendant regarding his name without a Miranda warning will introduce jury speculation regarding the suppressed evidence and confusion over a legal issue on which the Court has already ruled.

**F.     Government Motion in Limine to Preclude the Defense from Arguing that the Traffic Stop and Search of Defendant and the Vehicle Were Invalid**

The Court grants the Government's request for an order precluding defense from arguing that the August 30 traffic stop and the August 31 stop and search were illegal, because the Court has already ruled on these issues.

Defendant states that he will not argue that the traffic stops were not based on probable cause. However, Defendant also argues that the Court should suppress the officers' observation during the August 31 stop and arrest that Defendant was sitting in the passenger seat of the car and that the gun slid down to his feet in the car. He argues that this evidence is fruit of the poisonous tree from the illegal interrogation regarding giving a false name.

As Defendant concedes, the discovery of the firearm on August 31 is admissible under the inevitable discovery doctrine. ([Docket No. 119] Def. Opp. to Motions in Limine at 7.) The Court has already ruled that the inevitable discovery doctrine applies to the discovery of the gun because Sweeney was justified in stopping and seizing the car and ordering Defendant to exit the vehicle regardless of the answers Defendant provided to Sweeney's questions, so Sweeney would have inevitably seen Defendant in the passenger seat and seen the gun sliding to the floor regardless of whether he asked improper questions

regarding Defendant's name.  Moreover, Sweeney observed Defendant in the passenger seat before he asked Defendant any questions.

### G.  Government Motion in Limine for Sequestration of Witnesses

The Court grants the Government's request that the Court sequester all witnesses during trial, with the exception of the Government's case agents, Special Agent Kylie Williamson and Task Force Officer Timothy Moore. Defendant agrees that sequestration of witnesses is appropriate.

"Sequestration of most witnesses is mandatory when requested, <u>see</u> Fed. R. Evid. 615, but the district court is granted wide latitude in implementing sequestration orders, and the standard of review is abuse of discretion."  <u>United States v. Collins</u>, 340 F.3d 672, 680 (8th Cir. 2003) (citations omitted). Additionally, Rule 615 does not authorize exclusion of certain witnesses, such as "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney," an exception applied to the Government's case agent.  This exception can apply to the case agent even though the case agent will testify at trial.  <u>See</u> <u>United States v. Engelmann</u>, 701 F.3d 874, 877 (8th Cir. 2012) ("[T]he decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion.") (quotations omitted).

13

**H.     Defense Motion in Limine Precluding Ballistic Matching Evidence and Testimony of Government Expert Travis Melland**

The Government seeks to call BCA forensic scientist Travis Melland as an expert on ballistic evidence matching; Melland conducted a ballistics analysis on shell casings recovered from the scene of the August 30 shooting and the firearm charged in the Indictment. Additionally, during rebuttal, the Government may offer Melland to testify regarding the ballistics analysis of the shell casings recovered from the August 30 shooting and two other shooting incidents.

**1.     Timing of Disclosure**

The Court rejects Defendant's assertion that Melland's testimony should be excluded because the Government failed to timely disclose all relevant evidence regarding Melland.

On October 25, 2019, the Court issued an Arraignment Order stating that all Government disclosures required by Federal Rule of Criminal Procedure 16 were due by November 1, 2019. [Docket No. 15]

Among other things, Rule 16 provides:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's

14

opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).

Defendant represents that, on December 9, 2019, Defendant demanded that the Government produce evidence under Rule 16, including "[a] written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. This summary must describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications." The January 3, 2020 Pretrial Order noted: "The Government represents that it has made all disclosures required under Rule 16, and that it will continue to supplement its disclosures as additional materials come into its possession." ([Docket No. 62] Pretrial Order at 3.) The Order provided that the parties must "disclose the identity of any non-rebuttal experts and all non-rebuttal expert disclosures 30 days before trial. Any rebuttal experts must be noticed along with the production of rebuttal expert disclosures no later than 10 days before trial." (Id. at 2.)

On November 1, 2019, the Government produced a Report of Investigation that summarized the several National Integrated Ballistic Information Network ("NIBIN") lead notifications. It produced the NIBIN lead notifications on

January 28, 2021.  These documents contain language indicating that the results had not yet been confirmed by microscopic comparison.  On March 30, 2021, the Government emailed defense counsel three reports on the examination of physical evidence, all dated March 19, 2021.  These reports provided the results of laboratory examination of the comparison between the cartridge casings.  The Government later produced the full case file for each expert report when the Government received it.  During the week of May 10, the Government disclosed reports related to their expert's conclusions, professional background, and chain of custody.

Based on the record before the Court, the Government has timely disclosed the reports regarding ballistics testing as soon as it received them.  Although the Government did not technically comply with the Court's Pretrial Order requiring 30 days' notice regarding identification of expert witnesses for the case-in-chief, the Court concludes that this failure was harmless and in good faith.  Due to the conditions of the COVID-19 pandemic, jury trials have only recently begun in this District and the trial date for this case was changed on short notice and moved up when a slot unexpectedly became available, giving the parties less than 30 days' notice.  The Government has provided information to Defendant

as soon as possible and has offered to allow the defense to meet with Melland

and any other Government expert before trial, which ameliorates any prejudice

to Defendant regarding the rolling disclosures.

### 2. Daubert

Defendant argues that, if the Court does not exclude the Government's

expert testimony as untimely disclosed, it should hold a <u>Daubert</u> hearing so that

the defense can challenge the admissibility of Melland's testimony.

> Federal Rule of Evidence 702 permits a district court to allow the
> testimony of a witness whose knowledge, skill, training, experience
> or education will assist a trier of fact in understanding an area
> involving specialized subject matter.  Such a witness is regarded as
> an expert under the rule.  . . .  In deciding whether to permit expert
> testimony, a district court still must balance the probative value of
> the testimony versus its possible prejudicial effects.

<u>United States v. Molina</u>, 172 F.3d 1048, 1056 (8th Cir. 1999) (citations omitted).

Defendant does not challenge Melland's qualifications.  Rather, Defendant

appears to challenge the fundamental reliability of the general field of toolmark

and firearms identification.  The Court concludes that, in this case, no <u>Daubert</u>

hearing is necessary because courts routinely find that firearm and toolmark

identifications are reliable.  <u>See, e.g.</u>, <u>United States v. Otero</u>, 849 F. Supp. 2d 425

(D.N.J. 2012).

For example, in <u>United States v. Black</u>, the court "conclude[d] that a

<u>Daubert</u> hearing is unnecessary [regarding the reliability of toolmark

identification with firearms].  Findings made by numerous other federal courts

provide this Court with a well-documented record regarding the methodology at

issue."  No. CR 14-364 (RHK/FLN), 2015 WL 13660442, at *5 (D. Minn. Aug. 21,

2015), <u>order affirmed</u>, [Docket No. 452] (Sept. 14, 2015 D. Minn.) (Kyle, J.).

"Numerous courts across the country have conducted thorough analyses of the

reliability of toolmark identification with firearms in light of the [National

Academy of Sciences].  It appears that in every instance, the court determined

that expert testimony on toolmark analysis was admissible."  <u>Id.</u> (gathering

cases).

> The Court

> acknowledges that there is a subjective component to firearm
> toolmark analysis, and there is not a set number of similarities that
> may exist between a bullet and a barrel to conclude with absolute
> certainty that the bullet came from a particular gun.  However, it is
> clear to this Court that when a bullet is fired from a gun, the gun
> will impart to the bullet a set of markings that is, at least to some
> degree, unique to that gun.  Firearms examiners can make
> observations of those markings—using a tested, peer reviewed, and
> generally accepted method—that allows the examiners to form an
> opinion about whether a particular bullet was or was not fired from
> a particular gun.

Id. at *6 (citation omitted).

Thus, the Court concludes that "expert testimony on forensic toolmark analysis for firearms is admissible under Rule 702." Id. The Court notes

> as have numerous other courts, that any ballistics expert may not testify that (1) he/she is "certain" or "100% sure" that two items match, (2) a match is to "the exclusion of all other firearms in the world," or (3) there is a "practical impossibility" that any other gun could have fired the recovered materials. A firearms expert may only testify that, in his or her expert opinion, the bullet came from the suspect firearm to within a reasonable degree of certainty in the firearms examination field. At trial, Defendant[] [is], of course, entitled to introduce testimony that refutes the testimony of the Government's expert(s) conclusions . . . .

Id.

## I. Defense Motion in Limine Precluding Government Expert Testimony of Michael Flanagan

On May 13, 2021, the Government notified Defendant that it planned to call ATF Officer Michael Flanagan as an expert witness at trial regarding drug trafficking and provided Flanagan's resume. Defendant raised objections regarding the lack of a written report by Flanagan and a lack of relevance to the charge of felon in possession of a firearm.

The Government represents that will not elicit testimony from Flanagan or admit the seized drugs in its case-in-chief. If his testimony becomes relevant in rebuttal, the Government will notify the Court and Defendant before seeking

admission of his testimony.  Therefore, Defendant's motion to exclude

Flanagan's testimony is denied.

### J. Defense Motion in Limine Precluding Government Expert Testimony of Timothy Moore

On May 13, 2021, the Government notified Defendant of potential witness

ATF Officer Timothy Moore as an expert on gangs in St. Paul and produced his

resume.  Defendant raised objections regarding the lack of a written report by

Moore and a lack of relevance to the charge of felon in possession of a firearm.

The Government represents that it will not elicit expert testimony from

Moore in its case-in-chief.  If his testimony becomes relevant in rebuttal, the

Government will notify the Court and Defendant before seeking admission of his

testimony.  Therefore, Defendant's motion is denied.

### K. Defense Motion in Limine Precluding Untimely Government Disclosure and Expert Testimony

Defendant asserts that three categories of evidence should be excluded

based on the Government's failure to timely disclose that evidence: jail call

recordings, expert witnesses, and cell phone data.

On December 9, 2019, Defendant filed written demands for the

Government to produce evidence as required under Federal Rule of Criminal

Procedure 16.  The Court's January 3, 2020, Pretrial Order noted: "The

Government represents that it has made all disclosures required under Rule 16, and that it will continue to supplement its disclosures as additional materials come into its possession." ([Docket No. 62] Pretrial Order at 3.)

### 1.    Jail Call Recordings

Among other things, Rule 16 provides:

Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

(i) any relevant written or recorded statement by the defendant if:

> • the statement is within the government's possession, custody, or control; and
> • the attorney for the government knows--or through due diligence could know--that the statement exists;

Fed. R. Crim. P. 16(a)(1)(B).

On April 23, 2021, the Government produced a number of recorded telephone calls made by Defendant and Lindsey while in jail. On May 12, 2021, the Government produced more than 300 hours of additional recordings of jail calls by Defendant and Lindsey. Defendant argues that these recordings were under the Government's control and it failed to timely produce them as required by Rule 16 and the Pretrial Scheduling Order. He asserts that he is prejudiced by

having to examine this large amount of evidence so close to trial and requests that it be excluded from trial.

The Government does not intend to offer these recordings in its case-in-chief and states that it produced the jail calls as part of its continuing discovery obligations and out of an abundance of caution. The Court concludes that the Government has produced the evidence in a timely manner once it was obtained by Government attorneys and that Defendant has sufficient time to review that evidence before trial.

### 2.    Expert Witnesses

The Court rejects Defendants' request to exclude Government expert witnesses Melland, Moore, and Flanagan because they were not revealed until May 13, 2021, 18 days before trial.  The Court's Pretrial Order directed the parties to disclose information relating to non-rebuttal experts 30 days before trial and relating to rebuttal experts 10 days before trial.  Flanagan and Moore are rebuttal experts; under the Court's Pretrial Order, disclosure was due 10 days before trial, so the Government has met the Court's deadline.  With regard to Melland, as the Court has previously noted, the trial notice was filed in this case fewer than 30 days before trial and the trial date was set with little notice, due to pandemic trial

scheduling issues, so the Government did not have 30 days' notice of the trial.

However, the Government did produce Melland's reports to Defendant when it

received them, more than 30 days before trial, Defendant did engage his own

ballistics expert to review the reports, and the Government has made Melland

available for defense questioning.  The Court concludes that the Government has

acted in good faith and that Defendant is not prejudiced by the revelation of

Melland as a testifying expert fewer than 30 days before trial.

### 3.     Cell Phone Data

Among other things, Rule 16 provides:

Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

(i) any relevant written or recorded statement by the defendant if:

> • the statement is within the government's possession, custody, or control; and
> • the attorney for the government knows--or through due diligence could know--that the statement exists;

[and]

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . data, . . . , if the item is within the government's possession, custody, or control and:

> (i) the item is material to preparing the defense;

> (ii) the government intends to use the item in its case-in-chief
> at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(B), (E).

On May 14, 2021, the Government produced evidence from a search warrant executed on T-Mobile in 2021 that produced cell phone records from accounts linked to phones confiscated from Lindsey and Defendant. The records show telephone numbers and texts transmitted from the phones and the location of the cellular towers used to transmit the calls and texts. The Government represented that it had not found any useful data in the records to date.

Defendant argues that due to this late disclosure, he has not had an opportunity to challenge the search warrant. He requests permission to challenge the admission of these records and their search warrants if the Government attempts to admit the records into evidence. He asserts that he is prejudiced by having to examine this large amount of evidence on the eve of trial and requests that it be excluded from trial.

The cell phone data records were obtained pursuant to a federal search warrant signed by Magistrate Judge Schultz on March 15, 2021. The Government disclosed the warrant to defense counsel on April 23, 2021. The Government did

not receive a response from the service provider for several weeks.  Soon after receiving the results from the search warrant, the Government produced the evidence to defense counsel on May 14, 2021.

The text messages and data from Defendant's (and Lindsey's) phones were not "within the government's possession, custody, or control" until T-Mobile complied with the search warrant and produced the evidence to Government. There is no indication that, after the Government received the evidence from T-Mobile, it delayed in disclosing it to Defendant.  The Government disclosed the warrant to defense counsel on April 23, 2021, so Defendant had time to file a motion challenging the search warrant.  Therefore, Defendant's motion is denied.

Accordingly, based upon the files, records, and proceedings herein, the Court issues the above Memorandum in support of the Order on the Motions in Limine filed May 24, 2021 [Docket No. 127].


Dated:  May 26, 2021                    s/Michael J. Davis
                                        Michael J. Davis
                                        United States District Court